# EXHIBIT 1

FILED: NASSAU COUNTY CLERK 03/21/2024 03:19 PM
INDEX NO. 601659/2016

NYSCEF DOC. NO. 130     Case 2:24-cv-05383-PKC-LGD    Document 9-1     Filed 08/21/24    Page 2 of 56 PageID #:     RECEIVED NYSCEF: 03/21/2024
600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------X

YOSSEF KAHLON a/k/a JOSSEF KAHLON
and ATLAS SOLAR HOLDINGS, LLC,

                    Plaintiffs,

      Against

ERICA T. YITZHAK, THE LAW OFFICES
OF ERICA T. YITZHAK and
ERICA T. YITZHAK, ESQ., P.C.

                  Defendants.

------------------------------------------------------------X

**Notice of Motion**

Index No.:
601659/2016

 

 

 

**PLEASE TAKE NOTICE**, that upon the annexed affirmation of Erica Yitzhak, Esq., and upon the Memorandum of Law and the Exhibits referenced therein, a motion will be made at the Supreme Court of the State of New York, County of Nassau, at the Courthouse located at 100 Supreme Court Drive, Mineola, New York, on the 30th day of April, 2024, at 9:30 A.M. in the morning of that day or as soon as thereafter as counsel can be heard for an Order, reconsidering the Court's prior Order of August 31, 2021, and upon such consideration, for a dismissal of the claims of the Plaintiffs, a vacatur of the Judgment entered against the Defendants, and for such further relief as the Court may deem just and appropriate.

1

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 3 of 56 PageID #:
607

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR 2214 (b),

answering affidavits, if any, are to be served upon the undersigned at least seven (7)

days prior to the return date of this motion.

Dated:     March 21, 2024
           Syosset, New York

                        **THE WEINSTEIN GROUP, PC**

                        Lloyd J. Weinstein, Esq.
                        (Rule 130-1.1a) (NYS Tech Law §304(2))
                        6800 Jericho Turnpike – Suite 112W
                        Syosset, New York 11797
                        T: (516) 802 5330
                        F: (516) 802 5332
                        ljw@theweinsteingroup.net

Case 2:24-cv-05383-PKC-LGD Document 9-1 Filed 08/21/24 Page 4 of 56 PageID #: 608

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------X

YOSSEF KAHLON a/k/a JOSSEF KAHLON
and ATLAS SOLAR HOLDINGS, LLC,

                            Plaintiffs,                     **AFFIRMATION**

        Against                              Index No.: 601659/2016

ERICA T. YITZHAK, THE LAW OFFICES
OF ERICA T. YITZHAK and
ERICA T. YITZHAK, ESQ., P.C.

                            Defendants.

------------------------------------------------------------X

**ERICA T. YITZHAK**, an attorney duly licensed to practice law in the Courts of the

State of New York, and mindful of the penalties of perjury, affirms as follows:

1.     I am an individual named Defendant in the above-captioned matter, as

        well as the principal of the entities named herein, and am fully familiar

        with the facts and circumstances of this matter.

2.     In addition, I am an attorney, licensed to practice law in the Courts of

        the State of New York.

3.     This is an extremely complicated matter with multiple pending and

        competing lawsuits involving multiple parties in multiple lawsuits in

        multiple jurisdictions.

4.     Below is a summary of the identities of the parties involved in the

        matter and relevant facts that lead up to the instant application.

5.     **Yossef Kahlon**, a/k/a/ Jossef Kahlon ("Kahlon") is an individual, who

        resides in Nassau County, New York and Miami, Florida.

1

6. **Atlas Solar Holdings, LLC** ("Atlas") is an entity that participates in the Solar electric generation space, and has a principal place of business at New York, New York.

7. **Sunray Solar, Inc**. is an entity which participates in the Solar electric generation space and had a principal place of business at 644 Cross Street, Suite 10, Lakewood, N.J. 08701.

8. **Troy Lambe** ("Lambe") is an individual, whose residence is in New Jersey at 546 South Cooks Bridge Road, Jackson, N.J. 08572.

9. **Max Diversified Inc**. is a corporation located in New Jersey and had a principal place of business at 644 Cross Street, Suite 10, Lakewood, N.J. 08701.

10. In October 2012, Kahlon and Atlas commenced an action against Lambe and Max Diversified, Inc. in Supreme Court, New York County (Index No. 57465/2012) ("Prior Court Action").

11. The Prior Court Action made claims for breach of contract for failing to complete work under a Contractor Installation and Completion Guarantee and for Fraud.

12. I was attorney for Kahlon and Atlas in the Prior Court Action, and I caused to be filed UCC liens against Troy Lambe, against Sunray Solar, Inc. and against Max Diversified Inc.'s assets at the direction of Kahlon and Atlas, supported by the information they provided to me at that time.

2

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 6 of 56 PageID #:
610

13. In March 2013, Sunray and Lambe moved for summary judgment dismissing the complaint in the Prior Court Action based upon the lack of jurisdictional allegations in the complaint, improper assertion of jurisdiction in New York state, failure to plead fraud with particularity, for the wrongful demand of punitive damages in a breach of contract case, and on the basis that documentary proof demonstrated full completion of the projects.

14. In an order dated July 8, 2013, the complaint in the Prior Court Action was dismissed only for lack of personal jurisdiction.

15. In May 2013, while the Prior Court Action was still pending, Lambe, Sunray and Max Diversified, Inc. commenced an action in United States District Court for the Eastern District of New York ("Federal Action") (Case No. 13-cv-03126) against Kahlon, Atlas and Yitzhak, alleging tort and contractual-based causes of action.

16. I was represented by Kaufman, Dolowich & Voluck, LLP.

17. Kahlon and Atlas, with separate representation, filed an answer with counterclaims alleging Fraud, Misappropriation, breach of Contract, negligent misrepresentation and negligence but critically did not assert any cross-claims for malpractice against me, despite the issue being raised many times.

18. A jury trial was held in the Federal Action. On January 29, 2016, prior to verdict and pursuant to a settlement agreement, Lambe, Sunray and

Max Diversified settled all of its claims in the Federal Action asserted against Yitzhak. Kahlon also had the opportunity to participate in this settlement but refused to do so.

19.  In February, 2016, the jury rendered a verdict in the Federal Action in favor of Lambe, Sunray and Max Diversified and against Kahlon and Atlas in the amount of $1 Million dollars and found in favor of Lambe, Sunray and Max Diversified on all of Kahlon's counterclaims which were dismissed.

20.  The jury found liability against Kahlon and Atlas on Sunray's claims of tortious interference, defamation, abuse of process, *prima facie* tort and Plaintiffs' wrongful filings of UCC-1 Statements in violation of New Jersey law.  The verdict was broken down to $750,000 in compensatory damages and $250,000 in punitive damages.

21.  On March 11, 2016, Kahlon and Atlas wrongfully commenced the instant action ("Malpractice Action"), despite having waived the right to do so by not asserting the malpractice cross-claim during the Federal Action, making the instant malpractice claims barred by *res judicata*.

22.  The complaint in the Malpractice Action, based on the same circumstances and facts giving rise to the Federal Action, alleged that Yitzhak caused to be filed and served a Summons with Notice on Sunray in the Prior Action, seeking damages of $1,847,165 plus punitive damages of $5,541,495 in a breach of contract action.

4

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 8 of 56 PageID #: 612

23.     The Sunray Parties filed an Amended Answer to the Verified Amended Complaint and then moved for summary judgment.

24.     In its decision on a motion to dismiss the complaint, the Supreme Court found that no acts took place in the State of New York, and that personal jurisdiction was never obtained over the Sunray Parties.

25.     I, now represented by Verner, answered Kahlon's Malpractice complaint.

26.     Verner represented me through a motion for summary judgment, which was heard before the Hon. Justice Vito M. DeStefano in Supreme Court, Nassau County.

27.     In a decision dated August 31, 2021, Justice DeStefano granted summary judgment to the Kahlon parties against me. **Exhibit A**. The Court awarded judgment in the amount of $1,000,000 plus interest retroactive to the 2016 date of commencement, against Yitzhak.

28.     Plaintiffs presently have a Judgment against Defendants in the amount of $1 Million with interest from September 27, 2016. NYSCEF 283.

29.     Plaintiffs have now started to enforce this Judgment and have issued a Subpoena and Marshall's Levy dated February 9, 2024, attached hereto as **Exhibit B**.[1]

---

[1] The Marshall's Levy was only served on 345 East 56th Street Owners Inc. and not on any of the Judgement Debtors.

5

30. As the Court can see, this Information Subpoena with Restraining Notice and Marshall's Levy was served on 345 East 56th Street Owners, Inc.

31. However, this Court, just like the Court in the Federal Action does not have all the facts.

32. As an attorney bound by the Attorney-Client privilege, during the trial in the Federal Action, I was caused to suffer not being able to defend what were the proper professional actions taken based on the intentionally incomplete information provided to me by Kahlon and Atlas.

33. It first started to become clear during the Federal Action trial as evidence came out, and continued after Summary Judgement was issued in this matter once I was finally able to communicate with Mr. Lambe, just how misled I was by my former client, Kahlon and Atlas.

34. Kahlon and Atlas initially came to me to collect on unpaid bills of some of the Sunray installation clients who were not paying on their monthly usage accounts. These clients all had complaints about their systems, which Kahlon and Atlas attributed to incomplete installation. Kahlon and Atlas provided me with a copy of the installation agreements with Lambe and Sunray. The installation agreement clearly provided that if there were issues with the installations and they were incomplete, Atlas had the right to take action against Sunray's assets, including the filing

of UCC financing statements because under the installation agreement, Sunray and Lambe pledged their assets to Atlas in the event of a breach of the installation agreement.

35.     As such, based on the information given to me by Kahlon and Atlas, the language in the installation agreements and my additional communications with Kahlon's primary employee, Edward Gurin, my actions undertaken against Lambe, Sunray and Max Diversified were not improper.  However, none of this information could be disclosed during the Federal Action, as I was gagged by Kahlon subject to the attorney-client privilege.

36.     After the conclusion of the Federal Action, I came to learn about the existence of maintenance agreements between Kahlon and Atlas and Sunray and Lambe, and that Kahlon and Atlas had stopped paying Sunray and Lambe under the maintenance agreements and this is why Sunray and Lambe stopped servicing the solar systems sold to Kahlon and Atlas. This information was intentionally withheld from me by Kahlon and Atlas.

37.     An additional aspect of the Kahlon and Atlas complaint had to do with Kahlon's investment and the volatility of the SREC credit in New Jersey.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 11 of 56 PageID #: 615

38.     Kahlon and Gurin told me Kahlon and Atlas were "guaranteed" a certain return by Lambe and Sunray and the person who introduced Kahlon to Lambe.

39.     However, the renewable energy credit market in New Jersey was in fact volatile and it was underperforming around the time Kahlon eventually purchased the systems at issue. During the Federal Action it came out through witnesses that Kahlon was provided with several spreadsheets showing in fact the New Jersey renewable energy market could produce volatile and unpredictable returns.

40.     The first time I ever saw these spreadsheets was at the trial in the Federal Action. Kahlon and Gurin never provided them to me and never made me aware of the information contained in them.

41.     I received voluminous emails from Gurin, on behalf of Kahlon and Atlas, directing me to all of Lambe's assets they wished to file UCC liens against, the three Lambe/Sunray investors they asked me to send the initial letters to informing them of the litigation commenced against Sunray and Lambe by Kahlon and Atlas, as well as the basis for the litigation and their claims against Lambe, Sunray and Max Diversified.

42.     I spent hours on phone calls and reviewing email correspondence with Kahlon and Gurin on this matter, and reviewed several completion guarantees and payment schedules for Sunray installed systems purchased by Kahlon and Atlas.

Case 2:21-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 12 of 56 PageID #: 616

43. However, I was unable to reveal the majority of this information to the Court or the late Hon. Wexler during the Federal Action because Kahlon refused to waive the attorney-client privilege, instead, using it as a weapon against me.

44. In the Federal Action wherein Kahlon was sued, he had ample opportunity to make a claim against me, but chose not to do so, instead commencing this later-filed action.

45. As is discussed in the Memorandum of Law, which is incorporated herein by reference, this later-filed action in State Court is expressly forbidden by Federal Rule of Civil Procedure 13 and this action should have been dismissed as *res judicata*.

46. Kahlon and Atlas' malpractice claims against me cannot be re-adjudicated in this court because they are deemed to be *res judicata* based on his refusal to assert them as a cross-claim in the Federal Action.

47. My prior relationship with Kahlon and Atlas has been incredibly damaging to me as an attorney and personally. They used me, fed me false information, then used the attorney-client privilege as a shield to cause me to be castigated and punished. Then, when Kahlon had the opportunity to file a claim against me, he chose not to do so, instead bringing this later action in New York Supreme Court, resulting in a Judgment against me. However, for the reasons set forth in the

9

Case 2:24-cv-05383-PKC-LGD          Document 9-1          Filed 08/21/24          Page 13 of 56 PageID #: 617

memorandum of law, Plaintiffs' action should have been barred by the application of FRCP Rule 13 as *res judicata*.

**WHEREFORE**, I respectfully request an Order from this Court reconsidering its prior determination, and that upon such reconsideration, that the Court vacate the Decision of August 31, 2021, and dismiss this action in its entirety including vacating the Judgment entered against me, and further that the Court award me my costs and fees for the making of this motion and for such other and further relief as to this Court may appear just and proper.

Affirmed this 21st day of March, 2024

Great Neck, New York

_____

**ERICA YITZHAK**

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 14 of 56 PageID #: 618

**CERTIFICATION**

PLEASE TAKE NOTICE, that under 22 NYCRR §202.8-b[a] "Unless otherwise permitted by the court: (i) affidavits, affirmations, briefs and memoranda of law in chief shall be limited to 7,000 words each; (ii) reply affidavits, affirmations, and memoranda shall be no more than 4,200 words and shall not contain any arguments that do not respond or relate to those made in the memoranda in chief."

PLEASE TAKE FURTHER NOTICE that Affiant duly admitted to practice law before the Courts of New York State, in reliance on the "Word Count" feature for Microsoft Word hereby Certifies that the foregoing sets forth **1975** words, "exclud[ing] the caption, table of contents, table of authorities, and signature block," and Affiant further Certifies that the word count in the foregoing number "complies with the word count limit" under 22 NYCRR §202.8-b[a]-[b].


Dated:      March 21, 2024
               Syosset, New York


                                   By:  ERICA YITZHAK, Esq.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 15 of 56 PageID #: 619

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------X
YOSSEF KAHLON a/k/a JOSSEF KAHLON
and ATLAS SOLAR HOLDINGS, LLC,

                    Plaintiffs,

      Against                            Index No.: 601659/2016

ERICA T. YITZHAK, THE LAW OFFICES
OF ERICA T. YITZHAK and
ERICA T. YITZHAK, ESQ., P.C.

                    Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT

## OF MOTION TO RENEW AND REARGUE AND TO VACATE JUDGMENT

Respectfully submitted,

THE WEINSTEIN GROUP, P.C.
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Telephone: 516 802 5330
Facsimile: 516 802 5332

1

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 16 of 56 PageID #: 620

## FACTS OF THE MATTER

The facts of this matter and the related matters referenced herein are set forth at length in the attached Affirmation of Erica Yitzhak, Esq. and are incorporated herein by reference.

## SUMMARY OF ARGUMENT

As is described in the accompanying affirmation of Erica Yitzhak, Esq., the Plaintiffs in this matter had the opportunity in a prior Federal Action to plead the claims set forth herein, but chose not to do so.

In accordance with statute and caselaw, more specifically the Federal compulsory counterclaim rule, Plaintiffs should have been collaterally estopped from ever bringing this action.

Given the same, Plaintiffs' Judgment should be vacated and the matter dismissed.

## ARGUMENT

As an initial matter, Defendants respectfully move this Court to reconsider its prior Decision dated August 31, 2021 and entered September 1, 2021, and further request that this Court consider the impact of Federal Rule of Civil Procedure Rule 13 and the caselaw from New York concerning the same. A copy of this Decision is attached as **Exhibit A**, at NYSCEF 240.

2

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 17 of 56 PageID #: 621

The authority for the Court to reconsider its prior Decision may come either *sua sponte*, or upon motion by a party. Further, the authority for a Court to consider a previously unpleaded defense is clear in New York State. "A court may reconsider its prior decision based on an unpleaded claim or defense that is supported by the record. See, e.g., Johnston v. Nat'l R.R. Passenger Corp. (Amtrak), 161 A.D.2d 288, 289, 555 N.Y.S.2d 62, 63 (1st Dep't 1990) ("[T]here was no bar to granting renewal, upon the Federal statute, since a motion for renewal may be based upon law not previously considered."); Olean Urb. Renewal Agency v. Herman, 101 A.D.2d 712,712, 475 N.Y.S.2d 955, 957 (4th Dep't 1984) (holding that trial court should have granted defendant's motion to renew and should have granted summary judgment for defendant based upon unpleaded defense); Wilkinson v. Metropolitan Life Ins. Co., No. 106232/01, 2002 WL 34338595 (Sup. Ct. N.Y. County Aug. 26, 2002) (granting defendant's motion to reargue and, upon reargument, searching the record and granting defendant's motion for summary judgment on its cross-claim).

"Furthermore, there was not bar to granting renewal, upon the Federal statute, since a motion for renewal may be based upon law not previously considered, (Prude v. County of Erie, 47 AD2d 111, 113-114) and the excuse for neglecting in the first instance to raise the federal statute was valid. Counsel's failure to assert the statute earlier falls within the valid excuses of mistake, inadvertence or excusable neglect. (Foley v. Roche, 68 AD2d 558, 568.)" Johnston v. Nat'l R. Passenger Corp., 161 A.D.2d 288, 289, 555 N.Y.S.2d 62, 63 (App. Div. 1990).

3

In this matter, the failure to plead the affirmative defense of the *res judicata* impact of the Federal rule discussed below must fall under the valid excuse of mistake, inadvertence or excusable neglect.

As noted in Ms. Yitzhak's affirmation, the litigation between the parties was held in Federal Court. And it was in Federal Court that Plaintiffs here chose not to raise cross-claims against Defendants.

Under FRCP Rule 13, Counterclaim and Cross-claim:

> (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Reviewing the underlying facts in the Federal Action and this matter, and as is addressed in the accompanying affirmation, they both arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim. Yet, Plaintiffs did not raise that claim in Federal Court, instead bringing them later in this State Court.

However, this is prohibited and should have resulted in a preclusion of and dismissal of the claims. <u>Gargiulo v. Oppenheim</u>, 63 N.Y.2d 843 (1984). The claim preclusion doctrine bars subsequent litigation where (1) the prior action resulted in

4

Case 2:24-cv-05383-PKC-LGD Document 9-1 Filed 08/21/24 Page 19 of 56 PageID #: 623

an "adjudication on the merits," (2) the prior action involved the plaintiff or "those in privity" with her, and (3) the claims asserted in the later litigation "were, *or could have been*, raised in the prior action." <u>Monahan v. N.Y.C. Dep't of Corr.</u>, 214 F.3d 275 (2d Cir. 2000). In determining whether a claim "could have been" asserted, courts consider whether the claim arises from the "same transaction" that was at issue in the prior action. <u>Id.</u> at 289, 293; see also, <u>Flowers v. Conn. Light & Power Co.</u>, 2021 WL 5564085, at *2 (2d Cir. Nov.29, 2021) (precluding claims arising from "the same transaction [that] was at issue" in prior action); <u>Brodsky v. N.Y.C. Campain Fin. Bd.</u>, 796 F. App'x 1, 6 (2d Cir. 2019) (precluding claims that "relate[d] to the same transaction").

Under federal res judicata law, subsequent litigation is prohibited if a prior court ruling " 'was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action' " (<u>EDP Med. Computer Sys., Inc. v. United States</u>, 480 F3d 621, 624 [2d Cir], quoting <u>In re Teltronics Servs., Inc.</u>, 762 F.2d 185, 190 [2d Cir] ). <u>RM 18 Corp. v Bank of N.Y. Mellon Trust Co., N.A.</u>, 104 A.D.3d 752, 2013 NY Slip Op 1541, ¶ 1, 961 N.Y.S.2d 271, 272 (App. Div.).

"Based on the foregoing, we conclude that the later assertion in a state court action of a contention that constituted a compulsory counterclaim (Fed Rules Civ Pro rule 13 [a]) in a prior federal action between the same parties is barred under the doctrine of res judicata (*see Gargiulo*, 63 NY2d at 843; *RA Global Servs., Inc. v Avicenna Overseas Corp.*, 843 F Supp 2d at 390)." <u>Paramount Pictures Corp. v.</u>

5

<u>Allianz Risk Transfer AG</u>, 2016 NY Slip Op 05618, ¶ 2, 141 A.D.3d 464, 468, 36 N.Y.S.3d 11, 15 (App. Div.).

The foregoing was more definitively stated in the subsequent appeal to the Court of Appeals.

> While issue preclusion applies only to issues actually litigated, claim preclusion (sometimes used interchangeably with "res judicata") more broadly bars the parties or their privies from relitigating issues that were or could have been raised in that action (<u>Cromwell v County of Sac</u>, 94 US 351, 352, 24 L Ed 195 [1877]). The doctrine "encompasses the law of merger and bar"—it precludes the relitigation of all claims falling within the scope of the judgment, regardless of whether or not those claims were in fact litigated (<u>Migra v Warren City School Dist. Bd. Of Ed.</u>, 465 US 75, 77 n 1, 104 S Ct 892, 79 L Ed 2d 56 [1984]; <u>Monahan v New York City Dept. of Corr.</u>, 214 F3d 275, 285 [2d Cir 2000]; Wright § 1417). As such, claim preclusion serves to bar not only "every matter which was offered and received to sustain or defeat the claim or demand," but also "any other admissible matter which might have been offered for that purpose" (<u>Nevada v United States</u>, 463 US 110, 129-130, 103 S Ct 2906, 77 L Ed 2d 509 [1983], citing

6

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 21 of 56 PageID #: 625

Cromwell, 94 US at 352). In other words, claim preclusion may "foreclos[e] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit" (Migra, 465 US at 77 n 1). Paramount Pictures Corp. v. Allianz Risk Transfer AG, 2018 NY Slip Op 01150, ¶ 3, 31 N.Y.3d 64, 72-73, 73 N.Y.S.3d 472, 478, 96 N.E.3d 737, 743.

In view of the foregoing, the Plaintiffs' claims herein should never have been permitted to proceed pursuant to the Federal rule and New York's subsequent caselaw treatment of it. Accordingly, Defendants request that the Court review its prior Decision.

"We view defendants' motion as one to renew, and not as one to reargue, since it was "made on the ground of additional facts and law not previously considered" (Prude v County of Erie, 47 AD2d 111, 113-114). Defendants sought reconsideration of their motion in light of the applicable Statute of Limitations, a matter not before the court on the original motion (cf. Roy v National Grange Mut. Ins. Co., 85 AD2d 832). Although renewal should be denied where no valid excuse is offered for not submitting the additional facts upon the original application, or where a party moves again on a different legal argument merely because he was unsuccessful upon the original application (see Foley v Roche, 68 AD2d 558, 568), it is improvident to deny leave to renew where it may fairly be said that the new matter was not raised because of excusable mistake or inadvertence (see Wallach Agency v Bank of New York, 75

7

AD2d 878, 880).” <u>Olean Urban Renewal Agency v. Herman</u>, 101 A.D.2d 712, 712-13, 475 N.Y.S.2d 955, 957 (App. Div. 1984).

Given the import of the Federal Rule, and its obvious impact on the present litigation, the failure to raise it was excusable mistake or inadvertence, and a renewal and reversal is warranted, and as set forth above, appropriate.

Although a prior application for reconsideration has been filed herein, the relief sought by this motion was not previously made to this Court.

## CONCLUSION

Given the foregoing, Plaintiffs' claims should never have been heard by this Court, nor resulted in any adjudication.

This Court has the power, *sua sponte*, to recall its prior Decision and further the authority to consider an unpleaded defense.

In this matter, Defendants respectfully pray for an Order from this Court:

1. reconsidering its Decision of August 31, 2021, and that upon such reconsideration;

2. that the Court determine that the claims of the Plaintiffs are precluded under the doctrine of *res judicata;*

3. that the Court vacate the Judgment entered against Defendants;

4. that the Court dismiss the claims of the Plaintiffs with prejudice; and

5. for such other and further relief as to this Court deems just and proper.

8

Case 2:24-cv-05383-PKC-LGD   Document 9-1   Filed 08/21/24   Page 23 of 56 PageID #: 627

**WHEREFORE**, movant respectfully prays for an Order from this Court:

1. reconsidering its Decision of August 31, 2021, and that upon such reconsideration;

2. that the Court determine that the claims of the Plaintiffs are precluded under the doctrine of *res judicata;*

3. that the Court vacate the Judgment entered against Defendants;

4. that the Court dismiss the claims of the Plaintiffs with prejudice; and

5. for such other and further relief as to this Court deems just and proper.


Dated:      March 21, 2024
            Syosset, New York


Respectfully submitted ,

THE WEINSTEIN GROUP, P.C.

By:

LLOYD J. WEINSTEIN, Esq.
(Rule §130-1.1a) (NYS Tech Law §304(2))
6800 Jericho Turnpike, Suite 112W
Syosset, New York 11791
Telephone: 516-802-5330
Facsimile: 516-802-5332
ljw@theweinsteingroup.net

9

Case 2:21-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 24 of 56 PageID #: 628

## CERTIFICATION

PLEASE TAKE NOTICE, that under 22 NYCRR §202.8-b[a] "Unless otherwise permitted by the court: (i) affidavits, affirmations, briefs and memoranda of law in chief shall be limited to 7,000 words each; (ii) reply affidavits, affirmations, and memoranda shall be no more than 4,200 words and shall not contain any arguments that do not respond or relate to those made in the memoranda in chief."

PLEASE TAKE FURTHER NOTICE that Affiant duly admitted to practice law before the Courts of New York State, in reliance on the "Word Count" feature for Microsoft Word hereby Certifies that the foregoing sets forth **1758** words, "exclud[ing] the caption, table of contents, table of authorities, and signature block," and Affiant further Certifies that the word count in the foregoing number "complies with the word count limit" under 22 NYCRR §202.8-b[a]-[b].

Dated:          March 21, 2024
                Syosset, New York


                            _____
                            By:  LLOYD J. WEINSTEIN, Esq.
                            (Rule 130-1.1a) (NYS Tech Law §304(2))
                            6800 Jericho Turnpike, Suite 112W
                            Syosset, New York 11791
                            Telephone: 516-802-5330
                            Facsimile: 516-802-5332
                            ljw@theweinsteingroup.net

10

SUPREME COURT - STATE OF NEW YORK

Present:

**HON. VITO M. DESTEFANO**

Justice

TRIAL/IAS,PART 5
NASSAU COUNTY

---

**YOSSEF KAHLON a/k/a JOSSEF KAHLON and
ATLAS SOLAR HOLDINGS, LLC,**

**Decision and Order**

**Plaintiffs,**

**MOTION SEQUENCE: 03, 04**
**INDEX NUMBER: 601659/2016**

-against-

**ERICA T. YITZHAK, THE LAW OFFICES OF ERICA
T. YITZHAK and ERICA T. YITZHAK, ESQ., P.C.,**

**Defendants.**

---

**The following papers and the attachments and exhibits thereto have been read on these motions:**

Notice of Motion No. 03
Affirmation in Support
Affirmation in Support
Affidavit in Support
Statement of Material Facts
Memorandum of Law in Support
Statement of Material Facts
Affidavit in Opposition
Affirmation in Opposition
Memorandum of Law in Opposition
Memorandum of Law in Further Support

Notice of Cross-Motion No. 04
Affirmation in Support
Affidavit in Further Support
Memorandum of Law in Support
Statement of Material Facts
Memorandum of Law in Reply
Reply Affidavit in Support
Letter to Judge dated May 10, 2021

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 26 of 56 PageID
#: 630

Plaintiffs move for an order:

1. Pursuant to CPLR 3212, granting summary judgment to Plaintiffs Kahlon and Atlas and against Defendants on liability and damages for Plaintiffs' First Cause of Action for legal malpractice, in the amount of the $1,000,009 [sic];

2. Pursuant to CPLR 5001(b), awarding Plaintiffs interest on $1,000,000 from September 27, 2016 to date of decision;

3. Pursuant to CPLR 3211(b) and CPLR 3212, dismissing each of Defendants' Affirmative Defenses, on the grounds that a defense is not stated or has no merit;

4. In the alternative, pursuant to CPLR 3212, granting summary judgment to Plaintiffs Kahlon and Atlas on liability for its First Cause of Action for legal malpractice, and, pursuant to CPLR 3211(d), CPLR 3212(c) and CPLR 2218, ordering an immediate trial concerning the extent of damages for legal malpractice, and also of any issues of material fact that are genuinely disputed by Defendants through the presentation of admissible evidence in opposition to this motion; and

5. For such other and further relief as the Court may deem proper, including the costs of the motion (Motion Sequence Number 3).

Defendants move for an order pursuant to CPLR 3212 granting them summary judgment dismissing the complaint (Motion Sequence Number 4).

## Background

In October 2012, Atlas Solar Holdings LLC ("Atlas") commenced an action against Troy Lambe and Sunray Solar Inc. (collectively referred to as "Sunray") and Max Diversified Inc. in the Supreme Court of New York County (Index No. 157465/12) ("prior state action"). The complaint in the prior state action reads as follows:

Plaintiff, by and through its attorneys, The Law Offices of Erica T. Yitzhak, as and for its complaint against defendants, Troy Lambe, Sunray Solar Inc. and Max Diversified Inc. alleges:

2. That at all times hereinafter mentioned, Defendant Sunray Solar, Inc., was and still is a New Jersey Corporation and Defendant's legal address is 644 Cross Street, Suite 10, Lakewood, NJ 08701.

3. That at all times hereinafter mentioned, Defendant Troy Lambe's legal address is 546 South Cooks Bridge Road, Jackson, NJ 08527.

4. That at all times hereinafter mentioned, Defendant Max Diversified Inc 's legal address is 644 Cross Street, Suite 10, Lakewood, NJ 08701.

5. That Plaintiff took out a loan in the amount of $159,600 with Cove Neck.

6. That Cove Neck obtained title to the two projects (Stasky, Polidore and McGuinn) which are funded through the loan (Exhibit "A").

7. That Defendants Sunray and Troy Lambe guaranteed prompt installation of the two projects.

8. That Defendants Sunray and Troy Lambe guaranteed the installation and pledged all of his assets.

9. That proceeds from these installations is due to Plaintiff in the amount of $1,874,165, none of which has been repaid.

10. That UCC liens have been filed against Defendant Troy Lambe's personal residence and assets.

11. That UCC liens have been filed against Defendants Sunray Solar Inc. and Max Diversified Inc. assets.

AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT.

* * *

13. Defendant breached the contract by failing to complete the work under the Contractor Installation and Completion guarantee.

14. Plaintiff suffered damages in the amount of $1,847,165 and punitive damages in the amount of $5,541,495 for breach of contract entered into on July 20, 2011.

AS AND FOR A SECOND CAUSE OF ACTION FOR FRAUD.

* * *

16. Plaintiff relied on Defendants' guarantee to promptly install and successfully complete the installation of the two projects.

Page 3 of 18

17. Defendants made the misrepresentation with knowledge of its falsity and with intent to defraud Plaintiff.

18. Plaintiff actually and justifiably relied on the misrepresentation.

19. As a proximate result of relying on Defendants' misrepresentation, Plaintiff incurred actual damages in excess of $ 1,847,165.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

1. That this Court enter a judgment against Defendants for $7,388,660 on the first and second causes of action (Ex. '11" to Motion Seq No 3).

Importantly, the Defendants at bar, Erica T. Yitzhak, The Law Offices of Erica T. Yitzhak, and Erica T. Yitzhak Esq. P.C. (collectively "Yitzhak"), were legal counsel for Atlas in that action.

In March 2013, Sunray and Lambe moved for summary judgment dismissing the complaint in the prior state action based upon, *inter alia*, there being no jurisdictional allegations in the complaint; that Atlas appeared to be erroneously asserting jurisdiction in New York based on the choice-of-law provision in the Atlas-Solar Agreements; that the complaint failed to plead fraud with particularity; punitive damages are not available for a breach of contract case; and that documentary evidence proved "that all work and installation of the three projects referenced in the complaint were completed" and, therefore Atlas's claims were "completely baseless and should be dismissed on the merits."

In an order dated July 8, 2013, the complaint in the prior state action was dismissed for lack of personal jurisdiction and Atlas's cross motion seeking leave to file an amended complaint was denied (Sherwood, J.).

In May 2013 (while the prior state action was still pending), Sunray and Max Diversified commenced an action in Federal Court against Yossef Kahlon, Atlas, and the Yitzhak Defendants (Index No. 13-CV-03126) ("Federal action") alleging tort and contractual-based causes of action.[1] According to the Plaintiffs herein, during the course of Yitzhak's representation of Atlas in the prior state action, Yitzhak "took certain actions, which later formed the basis for [the Federal] action commenced by Sunray Defendants against Plaintiffs and Yitzhak" (Affirmation in Support at ¶ 9).

---

[1] The Verner Firm was legal counsel for Sunray in the Federal action and Kaufman Dolowich & Voluck LLP was legal counsel to Yitzhak in the Federal action.

Kahlon and Atlas[2] filed their amended answer with counterclaims including fraud, misappropriation, breach of contract, negligent misrepresentation, and negligence.

From January 20, 2016 through February 1, 2016, a jury trial in the Federal action was conducted. On January 29, 2016, prior to verdict and pursuant to a settlement agreement, Sunray settled all of its claims in the Federal action asserted against Yitzhak.[3]

On February 1, 2016, the jury rendered a verdict in the Federal action in favor of Sunray and against Kahlon and Atlas (the Plaintiffs herein) in the amount of $1 million dollars. Specifically, the jury found liability as against Kahlon and Atlas on Sunray's claims of tortious interference, defamation, abuse of process, prima facie tort, and Plaintiffs' wrongful filing of UCC-1 Statements in violation of New Jersey law. The jury awarded the Sunray Parties $750,000 in compensatory damages and $250,000 in punitive damages (Ex. "34" to Motion Seq No 3).[4]

On the last day of trial, Judge Wexler stated, on the record:

I must tell you [Yitzhak] I was thinking of submitting this case with respect to your actions to the grievance committee. I believe you violated everything that a lawyer should have done in a case. Either you accepted what your client said and did what he said which you shouldn't have, or you did it only your own. Either one. You violated all the ethics as a lawyer. I'm putting this on the record. From hereon in, that a federal judge found your conduct disgusting, and I'm not sending it to the grievance committee, but if you do this again and they find out, they can reverse. So it's in open court that a federal judge on this date found your actions were horrible (Ex. "35" to Motion Seq No 3).

On March 11, 2016, Plaintiffs commenced the instant action against Yitzhak asserting causes of action for legal malpractice, breach of contract, breach of fiduciary duty, breach of quasi-contract, and unjust enrichment.

---

[2] Kahlon and Atlas are collectively referred to as "Kahlon" or "Plaintiffs".

[3] Pursuant to the settlement agreement: Sunray agreed to indemnify Yitzhak if the Plaintiffs subsequently commenced a legal malpractice action against Yitzhak, who was Plaintiffs' attorney in the prior state action; and the Verner firm was to be appointed counsel for Yitzhak should any malpractice action be commenced. The settlement agreement was placed on the record in open court before Hon. Leonard Wexler.

[4] On September 1, 2017, the Second Circuit affirmed the verdict and judgment in the Federal action.

Page 5 of 18

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 30 of 56 PageID #: 634

Specifically, with respect to the alleged malpractice in the prior state action, the Plaintiffs herein allege:

67. On or about October, 22, 2012, Defendants caused to be filed and served a Summons with Notice on Sunray Parties in the action entitled Atlas Solar Holdings LLC v. Troy Lambe, Sunray Solar Inc. and Max Diversified Inc. in the Supreme Court of the State of New York, County of New York, under Index Number 157465/2012, seeking damages in the amount of $1,847,165.00 plus punitive damages in the sum of $5,541,495.00 for breach of contract.

68. Notably, the Summons with Notice directed Sunray Parties to answer the "Complaint" in said action at the satellite location of the Supreme Court of the State of New York, County of New York, to wit, 80 Centre Street, New York, New York.

69. The Summons with Notice indicated that venue was based on Atlas' location at 210 Fifth Avenue, Suite 401, New York, New York.

70. The Summons with Notice indicated that the breach of contract claim alleged therein had arisen under a Loan and Profit Participation Agreement, dated July 20, 2011, to which Sunray Parties were not even parties.

71. After receiving a Notice of Appearance from Lambe and Sunray, pro se, rather than advising Lambe that he could not appear on behalf of the Corporation, on or about January 29, 2013, Defendants [Yitzhak] caused to be filed and served an unverified Complaint as against Sunray Parties, consisting of nineteen (19) paragraphs with two (2) causes of action, to wit, breach of contract and fraud (*see supra*).

72. The aforementioned unverified Complaint contained jurisdictional allegations wherein it was alleged that Sunray Parties were New Jersey residents.

73. In addition, the unverified Complaint alleged that Atlas had taken a loan in the amount of $159,600.00 with an entity by the name of Cove Neck.

74. Further, the unverified Complaint alleged that Cove Neck obtained title to the two (2) [sic] projects (Stasky, Polidore and McGuinn) that are funded through the loan.

75. The unverified Complaint also alleged that Sunray and Lambe guaranteed prompt installation of the two (2) projects and that the proceeds from these installations were due to Atlas in the sum of $1,875,165.00.

Page 6 of 18

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 31 of 56 PageID #: 635

76. The unverified Complaint likewise alleged that UCC liens had been filed as against Sunray Parties.

77. Thereafter, as the original unverified Complaint filed and served by Defendants [Yitzhak] in the Supreme Court of the State of New York, County of New York, alleged an incomplete set of inaccurate facts, on or about April 5, 2013, Defendants [Yitzhak] caused to be served, but not filed, a Verified Amended Complaint that now contained accurate facts.

78. The unfiled Verified Amended Complaint, although alleging that Sunray Parties were New Jersey residents, contained allegations that a choice of law provision contained in the contractual agreements between the parties stipulated that the matter would be governed by the laws of the State of New York.

79. The unfiled Verified Amended Complaint also alleged that UCC liens had been filed as against Sunray Parties.

80. In response to the Complaint, on or about March 6, 2013, Sunray Parties, through counsel, served and filed an Amended Answer to the Verified Amended Complaint which contained an affirmative defense of lack of personal jurisdiction.

81. Additionally, on or about March 26, 2013, Sunray Parties, through counsel, made an application to the Court seeking, inter alia, summary judgment pursuant to CPLR § 3212 for lack of personal jurisdiction.

82. In Sunray Parties' moving papers, Sunray Parties contended that the Verified Amended Complaint failed to state any basis for personal jurisdiction over the admitted New Jersey residents and, further, that Defendants [Yitzhak] had misconstrued a choice of law provision with a choice of venue provision, neither of which, according to Sunray Parties, conferred jurisdiction over Sunray Parties in New York Courts.

83. Sunray Parties also contended that had Defendants [Yitzhak] conducted a cursory review of New York case law, the lack of personal jurisdiction would have been obvious.

84. Finally, Sunray Parties sought dismissal pursuant to CPLR § 3012(b) based upon defective service in that Defendants failed to timely serve the original unverified Complaint within twenty (20) days of Lambe's and Sunray's Notice of Appearance and Demand for Complaint.

85. In fact, Sunray Parties contended that, although Defendants [Yitzhak] had filed an Affirmation of Service affirming that the Complaint was served on December 18,

2012, the envelope containing same was post marked on February 5, 2013.

86. In an effort to rectify their mistakes, Defendants [Yitzhak], as counsel for Plaintiffs, opposed the application and submitted a cross-motion seeking permission to now file, for the first time, the Verified Amended Complaint which had already been served.

87. By Order of the Honorable O. Peter Sherwood, Justice of the Supreme Court of the State of New York, County of New York, dated July 8, 2013, the Complaint was dismissed for lack of jurisdiction and the motion for permission to file the Verified Amended Complaint was denied as moot.

88. In its decision, the Court noted that the Complaint failed to state that any acts or business dealings took place in New York and that the only mention of New York was Atlas' address.

89. In its decision the Court also noted that it is well settled that a choice of law clause, standing alone, does not confer personal jurisdiction over Sunray Parties.

90. Finally, the Court, finding that Defendants had failed to meet their burden of proof on the issue of personal jurisdiction, granted Sunray Parties' application and dismissed the action, without reaching the issue as to whether or not the papers were timely served (Complaint at ¶¶ 67-90).

On May 3, 2016, Yitzhak answered the complaint and asserted 13 affirmative defenses.[5]

Kahlon moves, *inter alia*, for summary judgment on his claim for malpractice.

Yitzhak cross-moves for summary judgment dismissing the complaint.

For the reasons that follow, Kahlon's motion is granted to the extent indicated herein and Yitzhak's cross motion is denied.

---

[5] Yitzhak also commenced a third-party action against Sunray in connection with the indemnification provision of the settlement agreement in the Federal action. In the third-party action, the Verner firm appeared on behalf of both Yitzhak and third-party Defendant Sunray.

According to the Verner firm, the "Third-party Complaint was filed in 2016 in an overabundance of caution by Third-party Plaintiffs [Yitzhak] pending the appeal of the Federal Court action which gives rise to plaintiffs Kahlon's/Atlas' lawsuit here" (Affirmation in Opposition at ¶ 2).

Page 8 of 18

## The Court's Determination

Kahlon moves for summary judgment on their claim for attorney malpractice, which is set forth in the complaint as follows:

105. As set forth above and incorporated herein [see paragraphs 67-90], Defendants acted as Plaintiffs' attorney on a number of occasions pursuant to an agreement between Plaintiffs and Defendants.

106. Through and in connection with the Supreme Court action, Defendants acted as Atlas' attorneys beginning in or about June 2012 and on a continuous basis thereafter though at least in or about January 2016.

107. As attorneys for Plaintiffs, Defendants owed a duty to render legal services in a competent and professional manner and to act with ordinary and reasonable skill, care and diligence.

108. Throughout this period, and continuing to date, Defendants failed to exercise the care, skill and diligence commonly possessed and exercised by a member of the legal profession by, among other things:

(a) Not following up on matters and checking on the status of cases.
(b) Producing sloppy work product, including careless spelling errors and poorly drafted documents.
(c) Neglecting to timely file documents.
(d) Neglecting to obtain verifications for documents where required.
(e) Encouraging Atlas to file UCC-1 Statements in violation of state law.
(f) Telling Atlas that it was acceptable to hold off on notifying a debtor that UCC-1 Statements had been filed against his properties.
(g) Telling Atlas that it was acceptable to threaten criminal prosecution solely to obtain an advantage in a civil matter, in violation of N.Y. Rules of Professional Conduct 3.4(e), and then sending out a letter doing just that.
(h) Failing to include essential facts as to the jurisdictional basis for Atlas' Supreme Court case against Sunray Parties, to wit, that Sunray Parties approached Plaintiffs in New York, thereby providing a basis for personal jurisdiction. But for this omission by Defendants, Atlas' case against Sunray would not have been dismissed for lack of personal jurisdiction.
(i) Failing to provide Atlas with a written letter of engagement, as required by 2002-21 N.Y. St. Reg. 103.

109. Plaintiffs continually spoke with Defendants about these ongoing problems but Defendants failed to rectify the situation.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 34 of 56 PageID #: 638

110. Defendants' negligence was a proximate cause of Plaintiffs' damages described herein.

111. Plaintiffs incurred actual damages as the result of Defendants' actions and/or inactions.

112. But for Defendants' negligence, Plaintiffs would have prevailed in the underlying action and/or would not have sustained any damages.

113. Defendants' malpractice and breaches of fiduciary and other duties to Plaintiffs have directly and proximately caused substantial damage to Plaintiffs in an amount in excess of $5,000,000.00 plus interest.

114. Plaintiffs are also entitled to the return of all legal fees paid to Defendants as well as attorney's fees paid to other attorneys in an attempt to correct Defendants' mistakes.

115. By reason of the foregoing negligence of Defendants, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5,000,000.00 plus interest (Complaint at ¶¶ 105-115).

In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages" (*Schiller v Bender, Burrows and Rosenthal, LLP*, 116 AD3d 756 [2d Dept 2014] [internal quotation marks omitted]; citing *Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442 [2007]; *McCoy v Feinman*, 99 NY2d 295, 301–302 [2002]). "'To establish the element of causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages but for the attorney's negligence'" (*Marino v Lipsitz, Green, Fahringer, Roll, Salibury & Cambria, LLP*, 87 AD3d 566 quoting *Snolis v Clare*, 81 AD3d 923 [2d Dept 2011]).

In support of their motion for summary judgment on the claim for legal malpractice, Kahlon argues:

The facts upon which Kahlon's claim for malpractice is based are simple, and because they are beyond genuine dispute, entitle Kahlon to summary judgment as a matter of law. Yitzhak started the representation by filing illegal UCC liens against Lambe's personal and business assets. Yitzhak relied on the language in contractor guarantees which had guaranteed the "prompt installation and successful completion of said installation" of certain solar panel systems. The systems were installed on time, but some of the customers reported problems related to their installed systems.

Page 10 of 18

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 35 of 56 PageID #: 639

Yitzhak had no basis to conclude that any solar panel system for any of the twenty-six projects in which Kahlon had invested had not been installed. She admitted as much in her testimony in both this case and the federal case. She did not appreciate the distinction between installation of the solar systems (for which Lambe guaranteed by pledging assets) and performance problems related to the installed systems (for which Lambe had contractual obligations, but had not pledged any assets). Even if the language was ambiguous, "that ambiguity should have severely cautioned against the precipitous act of filing a UCC on the properties, particularly when Yitzhak had such limited information in her possession."

After filing these illegal liens, Yitzhak sent Lambe a letter attaching the liens, and then sued Lambe by filing a facially defective Summons with Notice. The Summons with Notice had no basis in fact or law as it referred to a breach of the Loan and Profit Participation Agreement, a document in which Lambe was not even a party. Yitzhak then filed a Complaint riddled with basic pleading errors. She failed to plead any basis for fraud, much less fraud consistent with CPLR 3016(b). She failed to plead personal jurisdiction. She asserted entitlement to punitive and "treble" damages with respect to a breach of contract claim, both of which are plainly not allowed. She even got the address of the court wrong. She failed to do the most routine investigatory work and legal research before filing this lawsuit.

Yitzhak then used the improper liens and defective lawsuit as the backbone for three false and defamatory letters she wrote to Lambe's funders. She believed that these letters were "essential." The letters accused Lambe of fraud and deceit, and attached copies of the liens and lawsuit. Yitzhak admittedly did not warn Kahlon that these letters might create liability to Kahlon. As Plaintiffs' expert witness put it:

> Yitzhak should have warned Kahlon that the accusations of fraud and deceit, outside of a legal complaint, were not protected by privilege and could lead to claims of defamation. Further, she failed to warn Mr. Kahlon that his efforts to recover his investment by using such tactics could inflict serious financial damage on Lambe and Solar that could cause them to retaliate with claims of their own (Berman Report at 23).

Yitzhak did not provide accurate advice to Kahlon by informing him of the settled law which surrounded his dispute with Lambe, and/or warning him of the consequences of her contemplated actions. Under New York law, a failure to inform a client of possible legal consequences of contemplated conduct is a proper basis for finding legal malpractice.

No one can seriously contend that what Yitzhak did was not malpractice as a matter of law. In both her actions and her failure to warn Kahlon about the legal consequences of those actions, Yitzhak failed to exercise the ordinary reasonable

Page 11 of 18

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 36 of 56 PageID
                                        #: 640

skill and knowledge commonly possessed by a member of the legal profession, causing actual and ascertainable damages.

Kahlon has also proven that Yitzhak is responsible for the $1 million verdict. Lambe had no basis to sue Kahlon -- much less obtain a $1 million verdict -- absent Yitzhak's conduct. Each of Lambe's successful claims were based on either the liens Yitzhak filed, the lawsuit Yitzhak pursued, or the letters Yitzhak penned. Lambe even argued in closing that he had proven Kahlon's malicious intent because "everything that was said in the Yitzhak papers was false." With respect to causation, a legal malpractice plaintiff needs to prove that the defendant-attorney's negligence was a proximate cause of damages. Without Yitzhak's negligence there could not have been a verdict against Kahlon. Because of Yitzhak's malpractice, her client Kahlon had to pay a $1,000,000 Judgment. As the Court of Appeals has held, damages in a legal malpractice case are designed "to make the injured client whole." This requires a judgment of $1,000,000 in Kahlon's favor.

Kahlon should be awarded statutory interest pursuant to CPLR 5001(b) from the date its damages were incurred. The dates of incurrence of damages are shown in the Kahlon Affidavit, i.e., from September 27, 2016 for the payment for bonding of the Judgment in the Lambe case.

Summary judgment should be granted to Kahlon as a matter of law on liability and damages on its First Cause of Action, together with prejudgment interest (Plaintiffs' Memorandum of Law in Support at pp 3-7 [Motion Seq No 3] [internal citations omitted]).

In support of their argument, Kahlon submits, *inter alia*, the pleadings, a Rule 19-a Statement of Material Facts, deposition testimony of Kahlon and Yitzhak, and the expert report of Marjorie Berman, Esq. who concluded that the "defendant attorney Erica Yitzhak, while representing the Plaintiffs in their dispute with Troy Lambe and related entities, deviated dramatically from the standard of care, and thus failed to exercise that degree of care, skill and diligence commonly possessed by a member of the legal community similarly situated" (Berman Report at ¶ 6).

Berman's opinion was predicated upon the following facts outlined in her report:

In 2011, Kahlon and his company, Atlas, entered into a series of agreements with Lambe and his related companies Sunray and Max Diversified. These Atlas-Solar Agreements included a series of Contractor Installation and Completion Guarantees ("Contractor Guarantees"), an unconditional guarantee, and a maintenance agreement, all of which provided that Atlas would fund the installation of a renewable solar energy system at designated locations after which Sunray and Lambe guaranteed the "prompt installation and successful completion" of those systems.

Page 12 of 18

Following installation, Sunray was required to pay Atlas certain specified revenue and entitlements from the various installations and Sunray was required to service and maintain the system. In addition, Sunray and Lambe guaranteed the payment to Atlas of all revenue and entitlements, including rebates, grants, and credits received by Sunray or Lambe from the solar energy system installations funded by Atlas.

Following Atlas's funding of the projects (which Kahlon alleges to be approximately 1.8 million) and Sunray's installation of the solar energy systems, various disputes arose between Kahlon and Solar.

Yitzhak was retained by Kahlon to "collect monies from certain customers who owed Kahlon money and to recover Mr. Kahlon's 1.8 million investment with Sunray.[6]

Yitzhak testified that the first substantive work she did in connection with her representation was to "file the UCC liens against the assets of Lambe and the Sunray Companies.

Yitzhak thereafter wrote a letter to Lambe advising him that liens had been filed against his personal residence in addition to his other assets and the assets of Sunray. The letter demanded payment of $1,874,165, which the letter stated represented the "full value of the solar installations," and advised that, absent such a payment, a lawsuit seeking "treble punitive damages" would be filed. According to Kahlon's expert, "Yitzhak was provided the monetary figure by Kahlon but could not recall any particular documents that she had seen to support that figure."

The following month, Yitzhak filed a Summons with Notice against Lambe and the Sunray Corporations in New York County claiming $1,874,165 in damages, plus more than $5 million in punitive damages "for breach of contract" under a "Loan and Profit Participation Agreement" as to which neither Lambe nor Sunray Companies were a party.

In December 2012, Yitzhak prepared a complaint in the New York County Action (see supra for complaint filed in the prior state action) which made no jurisdictional allegations notwithstanding Yitzhak being aware that there might be a basis for personal jurisdiction over non-domiciliary defendants Lambe and the Sunray Companies.[7]

Also, with respect to the installations themselves, the expert noted that Kahlon and Atlas never advised Yitzhak that Sunray had failed to install the systems.

---

[6] It appears that Yitzhak's representation of Kahlon and Atlas lasted from June of 2012 to July of 2013.

[7] The Sunray entities were New Jersey Corporations and Lambe was a New Jersey resident.

Page 13 of 18

Case 2:24-cv-05383-PKC-LGD Document 9-1 Filed 08/21/24 Page 38 of 56 PageID #: 642

In January 2013, Yitzhak served a letter on NJR Clean Energy Ventures Corporation, Clean Power Finance and NRG Energy, all of whom Yitzhak believed to be financial partners of Sunray (the "Demand Letters"). In Yitzhak's words she "transmitted copies of the UCC financial statements and complaint to the entities that had replaced Atlas as financing mechanisms for Sunray and Max Diversified."

Each Demand Letter stated that Atlas and Kahlon held liens against Sunray and Lambe, that legal action had been commenced, and that Atlas/Kahlon had suffered as a result of Lambe's and Sunray's "fraudulent and deceitful actions." A copy of the complaint and the liens were included with each letter, and the three financial partners were advised to "refrain from forwarding any payments" to Sunray and Lambe.

Plaintiffs' expert reported that Yitzhak failed to provide clear testimony as to the documents she reviewed, the investigation she conducted, or the facts that she understood prior to filing the liens or the complaint in the prior state action. Yitzhak also does not recall having any conversations with Kahlon about the costs and benefits of writing the demand letters to Sunray's "financial partners."

In February 2013, Yitzhak sent a letter to Norah and John Forsythe, demanding the return of $1,368,289 and asserting that Atlas had entered into the transaction to purchase solar installations as a direct result of their "deliberate fraudulent misrepresentations." In that letter, Yitzhak advised that unless the full amount of the money was paid within 5 days, she would commence a civil action. She further stated that her client would file criminal complaints against them as a result of their illegal actions.

Based on the above facts, which are predicated upon Yitzhak's deposition and other discovery in the prior state action and Federal action, Berman opined as follows:

> It is within the ordinary reasonable skill and knowledge commonly possessed by members of the legal profession to make a diligent effort to investigate the facts provided to them by their client, particularly when the facts are within the control and knowledge of the client, prior to undertaking legal action upon those facts. Yitzhak did not exercise reasonable skill and diligence in investigating the underlying facts prior to taking various actions. In particular, Yitzhak did not do a sufficient review of documents or investigation of the claims asserted by Plaintiff prior to (1) filing the UCCs; (2) preparing the Demand Letters; or (3) filing the Complaint.

> With respect to the UCCs, Yitzhak did not have a sufficient basis for filing the UCCs based upon the totality of the Contractor Guarantees

> With respect to the Demand Letters, for the same reasons set forth above, Yitzhak did not have a sufficient factual basis for sending the Demand Letters and to accuse Lambe and Sunray Solar Inc. of "fraudulent and deceitful actions."

Page 14 of 18

With respect to the filing of the Summons with Notice and the State Complaint, for the same reasons set forth above, Yitzhak did not have a sufficient factual basis for either the claim for breach of contract or the claim for fraud . . . .

As a general matter, Yitzhak did not exercise sufficient care to counsel Kahlon regarding the potential consequences of the actions she undertook with respect to (1) filing the UCCs; (2) sending the Demand Letters; and (3) filing the Complaint.

With respect to filing the UCCs, Ms. Yitzhak violated her duty of care by failing to warn Mr. Kahlon that filing the UCCs could create an exposure or liability for Atlas and for him. She failed to warn Kahlon about the consequences that could result in the event that the lien was filed without a proper basis, and that Mr. Kahlon could be held responsible for any damages that Lambe or Atlas Solar might suffer as a result of the erroneous filing. . . .

With respect to sending the Demand Letters, Ms. Yitzhak violated her duty of care by failing to warn Mr. Kahlon that the letters she sent to NJR Clean Energy Ventures Corporation, Clean Power Finance and NRG Energy might create exposure or liability for Mr. Kahlon if Mr. Lambe's business was affected by those letters.

It is within the ordinary reasonable skill and knowledge commonly possessed by members of the legal profession to conduct legal and factual research prior to commencing a Complaint. Yitzhak failed to exercise this skill and knowledge in multiple ways with respect to the Summons with Notice she filed and with respect to the Complaint she filed.

In my opinion, Yitzhak undertook the representation of Kahlon and Atlas with a goal to force Sunray to settle with Kahlon quickly and for a sizeable sum. Indeed, her retainer was a flat fee of $3,500 (for both aspects of the representation) which plainly did not contemplate litigation on Kahlon's behalf. In order to achieve the goal of extracting a significant settlement in a short period of time, Yitzhak undertook a strategy to apply maximum pressure and coercion. She did so without a proper investigation, without a factual and legal basis for the actions she undertook and without regard for the improper impact her conduct could have upon the Sunray defendants (Plaintiffs' Expert Report at pp 20-25).

Based on these submissions, Plaintiffs' Kahlon and Atlas have prima facie established entitlement to judgment as a matter of law on the cause of action alleging legal malpractice, establishing that, but for Yitzhak's conduct, Kahlon and Atlas would not have sustained the $1 million in damages in the Federal action, which were predicated upon Yitzhak's representation of Atlas in the prior state action. The court notes that, while proximate cause is generally a question for the factfinder (*Hain v Jamison*, 28 NY3d 524 [2016]), in appropriate circumstances it can, as

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 40 of 56 PageID #: 644

here, be determined as a matter of law (*see 180 Ludlow Dev. LLC v Olshan Frome Wolosky LLP*, 165 AD3d 594 [1st Dept 2018]; *see also Derdiarian v Felix Contracting Corp.*, 51 NY2d 308, 315 [1980]).

In opposition to Kahlon's prima facie showing, Yitzhak failed to submit an expert affidavit rebutting Berman's expert report and failed to come forward with evidence sufficient to raise a triable issue as to whether she committed malpractice or whether such malpractice proximately caused Kahlon to sustain damages. Therefore, Kahlon is granted summary judgment with respect to the claim for legal malpractice (*see Gottlieb v Karlsson*, 295 AD2d 158 [1st Dept 2002]).

*Yitzhak's Affirmative Defenses*

Kahlon has also demonstrated his entitlement to summary judgment dismissing Yitzhak's affirmative defenses.

Yitzhak advanced the following 13 affirmative defenses in her answer: Plaintiff fails to state a claim upon which relief may be granted (first); the negligence set forth in the complaint did not occur within three years before the commencement of this action and is thus barred by the Statute of Limitations (second); Plaintiff's claims are "barred due to the failure of Plaintiff to fulfill contractual conditions precedent" (third); Plaintiffs "consented to the acts" alleged in the complaint and such acts were "done with plaintiffs' direction, authorization, ratification, permission and approval" (fourth); Plaintiffs' claims are barred due to Plaintiffs' failure to mitigate damages (fifth); Plaintiffs' claims are barred due to the doctrine of unclean hands (sixth); Plaintiffs' claims are barred by virtue of controlling contract terms (seventh); any injuries and/or damages sustained by plaintiffs as alleged in the complaint were "caused in whole or in part by the contributory negligence and/or culpable conduct of said plaintiffs and not as a result of any contributory negligence and/or culpable conduct on the part of this answering defendants" (eighth); Plaintiffs' complaint "asserts knowingly false facts and is a fraud on the court" (ninth); the alleged incident complained of "resulted from circumstances or conditions beyond the control of defendant" (tenth); "on information and belief, third-part plaintiffs failed to take any legal action in a diligent or timely fashion, defendants altered their positions, and thus plaintiffs are guilty of laches and plaintiffs' claims accordingly are herein barred in their entirety" (eleventh); the "injuries allegedly sustained by plaintiff were caused in whole or in part by intervening criminal acts perpetrated by persons unknown by the defendant, and without fault on the defendant's part" (twelfth); and the "actions of the Plaintiff provoked and caused the results herein and this answering defendant state(s) as an affirmative defense plaintiffs' provocation by way of contributing and comparative negligence" (thirteenth).

Yitzhak's affirmative defenses are pleaded in a conclusory fashion (*see Cohen Fashion Optical, Inc. v V & M Optical, Inc.*, 51 AD3d 619 [2d Dept 2008]), have been abandoned (*see New York Commercial Bank v J. Realty F Rockaway, Ltd.*, 108 AD3d 756 [2d Dept 2013];

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 41 of 56 PageID
#: 645

*Starkman v City of Long Beach*, 106 AD3d 1076 [2d Dept 2013] [the failure to raise pleaded affirmative defenses in opposition to a motion for summary judgment renders those defenses abandoned and thus subject to dismissal]), or are otherwise without merit.[8]

With respect to Yitzhak's contention that Kahlon failed to mitigate damages (as alleged in the fifth affirmative defense), Yitzhak argues that Kahlon:

> [R]efused to enter into the Yitzhak settlement [in the Federal action] where a full release of Kahlon was offered by Sunray/ Lambe in exchange for Yitzhak's remaining policy limits so long as Kahlon dismissed his feeble counterclaims against Lambe. In short, Kahlon could have walked away from the potential exposure with a settlement paid for by Yitzhak. He refused insisting that his counterclaims still go to the jury or that he be paid money from the Yitzhak policy as well (Memorandum of Law in Opposition at pp 24-25).

While Yitzhak has failed to support her claim with any supporting legal authority, the court notes the following in Judge Melvin Schweitzer's order in *Red Zone LLC v Cadwalader, Wickersham & Taft LLP* (2013 NY Slip Op 32074(U) [Index No. 650318/11]):

> Cadwalader's affirmative defense that the plaintiff failed to mitigate damages is dismissed. The burden of proving the defense of failure to mitigate damages in a legal malpractice action is always on the malpracticing attorney. Lindeman v Kreitzer, 7 AD3d 30, 35 (1st Dept 2004). The law of legal malpractice has never recognized as a defense to a malpractice claim that the injured client "should have settled" or "should have paid." See Am. Int'l Adjustment Co. v Galvin, 86 F3d 1455, 1462 (7th Cir 1996). However there is no legal duty to settle a case. Even assuming that AIAC's failure to settle the case was stupid, such stupidity bore no causal connection to the injury it claims.
>
> The burden is on Cadwalader to establish that there is a defense of "failure to pay" or "failure to settle," and "no law has been cited to support this theory"

Accordingly, Yitzak's affirmative defenses are dismissed.

---

[8] Self-serving and conclusory allegations do not raise issues of fact and do not require Plaintiffs to respond to alleged affirmative defenses which are based on such allegations (*see Charter One Bank, FSB v Leone*, 45 AD3d 958 [3d Dept 2007]). Where a defendant fails to oppose some or all matters advanced on a motion for summary judgment, the facts as alleged in the movants' papers may be deemed admitted as there is, in effect, a concession that no question of fact exists (*see Kuehne & Nagel, Inc. v Baiden*, 36 NY2d 539 [1975]; *see also Argent Mtge. Co., LLC v Mentesana*, 79 AD3d 1079 [2d Dept 2010]).

Page 17 of 18

### Conclusion

Based on the foregoing, it is hereby

Ordered that branches "1", "2" and "3" of the Plaintiffs' motion are granted and the Plaintiffs' motion is, in all other respects, denied (Motion Sequence Number 3); and it is further

Ordered that the Defendants' cross motion is denied (Motion Sequence Number 4).

Let judgment enter in favor of the Plaintiffs and against the Defendants in the amount of $1,000,000, with interest, from September 27, 2016, plus costs and disbursements.

This constitutes the decision and order of the court.

DATE:   August 31, 2021

**ENTERED**

**Sep 01 2021**

NASSAU COUNTY
COUNTY CLERK'S OFFICE

_____
Hon. Vito M. DeStefano, J.S.C.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 43 of 56 PageID #: 647

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No. 601659/2016

-----------------------------------------------------------------X
YOSSEF KAHLON a/k/a JOSSEF KAHLON and
ATLAS SOLAR HOLDINGS, LLC,

                                                    Plaintiffs,

                        -against-

ERICA T. YITZHAK, THE LAW OFFICES OF
ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ.,
P.C.,

                                                    Defendants.
-----------------------------------------------------------------X

**INFORMATION SUBPOENA
WITH RESTRAINING
NOTICE**

# The People of the State of New York

To:    **345 EAST 56TH STREET OWNERS, INC.**
       c/o Halstead Management Co., Att Counsel
       770 Lexington Avenue, New York, New York 10065

        WHEREAS, in an action in the Supreme Court of the State of New York, County of
Nassau, between YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR
HOLDINGS, LLC, as plaintiffs, and ERICA T. YITZHAK, THE LAW OFFICES OF ERICA T.
YITZHAK and ERICA T. YITZHAK, ESQ., P.C., as defendants, a judgment was entered on or
about April 29, 2022, in favor of YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS
SOLAR HOLDINGS, LLC, judgment creditors, and against ERICA T. YITZHAK, THE LAW
OFFICES OF ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ., P.C., judgment debtors, in
the principal amount of $1,503,013.70, of which $1,503,013.70, together with interest thereon
from April 29, 2022, remains due and unpaid,

        **NOW, THEREFORE, WE COMMAND YOU**, to answer the within questions
in writing under oath and return the original of the questions together with your answers to the
undersigned in the prepaid addressed return envelope accompanying this subpoena within seven
(7) days of receipt.  False swearing or failure to comply with this subpoena is punishable as a
contempt of court.

Case 2:24-cv-05383-PKC-LGD     Document 9-1     Filed 08/21/24     Page 44 of 56 PageID #: 648

## RESTRAINING NOTICE

Pursuant to Section 5222(b) of the Civil Practice Law and Rules, a copy of which is set forth below, you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any property of the judgment debtors or pay over or otherwise dispose of any debt to the judgment debtors to any person other than the sheriff, except under direction of the sheriff or pursuant to order of the court, until the expiration of one year after this notice is served upon you, or until the judgment is satisfied or vacated, whichever event occurs first. Disobedience of the Restraining Notice is punishable as a contempt of court.

I HEREBY CERTIFY THAT THIS INFORMATION SUBPOENA COMPLIES WITH RULE 5224 OF THE CIVIL PRACTICE LAW AND RULES AND SECTION 601 OF THE GENERAL BUSINESS LAW THAT I HAVE A REASONABLE BELIEF THAT THE PARTY RECEIVING THIS SUBPOENA HAS IN THEIR POSSESSION INFORMATION ABOUT THE DEBTOR THAT WILL ASSIST THE CREDITOR IN COLLECTING THE JUDGMENT.

Dated:        New York, New York
              February 9, 2024

                                        VLOCK & ASSOCIATES, P.C.
                                        Attorneys for Judgment Creditor
                                        630 Third Avenue, 18th Floor
                                        New York, New York 10017
                                        (212) 557-0020

                                        By: _____
                                        Stephen Vlock, Esq.
                                        svlock@vlocklaw.com

## Section 5222(b) of the Civil Practice Law and Rules

**Effect of restraint; prohibition of transfer; duration.** A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or

if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
INDEX NO.: 601659/2016

YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR HOLDINGS, LLC,

Plaintiffs,

-against-

ERICA T. YITZHAK, THE LAW OFFICES OF ERICA T. YITZHAK and
ERICA T. YITZHAK, ESQ., P.C.,

Defendants.

**INFORMATION SUBPOENA WITH RESTRAINING NOTICE**

VLOCK & ASSOCIATES, P.C.

Attorneys for Plaintiff

630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020

INDEX NO. 601659/2016
RECEIVED NYSCEF: 03/21/2024

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 47 of 56 PageID #: 651

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No. 601659/2016

------------------------------------------------------------------X

YOSSEF KAHLON a/k/a JOSSEF KAHLON and
ATLAS SOLAR HOLDINGS, LLC,

**QUESTIONS AND ANSWERS
PURSUANT TO
INFORMATION SUBPOENA**

                                                    Plaintiffs,

                        -against-

ERICA T. YITZHAK, THE LAW OFFICES OF
ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ.,
P.C.,

                                                    Defendants.

------------------------------------------------------------------X

Judgment Debtors:    **ERICA T. YITZHAK**
                     **THE LAW OFFICES OF ERICA T. YITZHAK**
                     **ERICA T. YITZHAK, ESQ., P.C.**

STATE OF NEW YORK, COUNTY OF _____, SS.:

_____, being duly sworn, deposes and says: that deponent
        (Your Name)

is the _____ of **345 EAST 56TH STREET OWNERS, INC.**
                (Your Position or Title)

the recipient of an information subpoena herein and of the original and a copy of questions

accompanying said subpoena.  The answers set forth below are made from information obtained

from the records of the recipient.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 48 of 56 PageID #: 652

1.     Does the judgment debtor own any shares of stock in 345 East 56th Street Owners, Inc. (the "Corporation")?

ANSWER:

2.     If the judgment debtor owns shares of stock in the Corporation:

   a.   How many shares of stock does the judgment debtor own?

ANSWER:

   b.   When did the judgment debtor acquire ownership of the shares?

ANSWER:

   c.   Does the judgment debtor own the shares with anyone else?  If so, provide the name and address of said person(s).

ANSWER:

   d.   Does any person or entity have any lien upon the shares of stock?  If so, provide name and address of lienor(s) and details of lien(s).

ANSWER:

   e.   Provide a copy of the shares certificate.

3.      Is the judgment debtor a party to a lease or proprietary lease with the Corporation? If so, provide copy.

ANSWER:


4.      What apartment(s) does/do the lease(s) or proprietary lease(s) relate to?

ANSWER:


5.      Does the judgment debtor reside at 345 East 56th Street, Apt. 4D, New York, New York?

ANSWER:


6.      If the judgment debtor resides at 345 East 56th Street, Apt. 4D, New York, New York, does the judgment debtor reside with anyone else, and if so, what is/are the name(s) of such person(s)?

ANSWER:


7.      If the judgment debtor does not reside at 345 East 56th Street, Apt. 4D, New York, New York, where does the judgment debtor reside?

ANSWER:

8.      To what address does the Corporation or its managing agent send bills and correspondence to the judgment debtor?

ANSWER:


9.      Is Apartment 4D at 345 East 56th Street, New York, New York, rented or leased to a person who is not the judgment debtor?  If so, provide a copy of the rental/lease agreement.

ANSWER:


10.     Does the judgment debtor currently hold a position as an officer or director of the Corporation?  If so, state position:

ANSWER:


11.     Is the judgment debtor employed by the Corporation in any capacity whatsoever, whether as a full-time or part-time employee, independent contractor, or otherwise?

ANSWER:


12.     Does the judgment debtor owe any money to the Corporation, whether for maintenance arrears or otherwise?  If so, state how much is owed and what the amounts relate to.

ANSWER:

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 51 of 56 PageID #: 655

_____

(signature)


_____

(print name)


Sworn to before me this _____ day
of _____, 2024


_____

Notary Public


VLOCK & ASSOCIATES, P.C.
Attorneys for Judgment Creditor
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020


# EMAIL YOUR RESPONSES AND DOCUMENTS TO:

# SVLOCK@VLOCKLAW.COM

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 52 of 56 PageID #: 656

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
INDEX NO.: 601659/2016

YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR HOLDINGS, LLC,

Plaintiffs,

-against-

ERICA T. YITZHAK, THE LAW OFFICES OF ERICA T. YITZHAK and
ERICA T. YITZHAK, ESQ., P.C.,

Defendants.

## QUESTIONS AND ANSWERS PURSUANT TO INFORMATION SUBPOENA

## VLOCK & ASSOCIATES, P.C.

Attorneys for Plaintiff

630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020



# NEW YORK CITY MARSHAL

## Stephen W. Biegel

109 West 38th Street, Suite 200 • New York, NY 10018

Phone: (212) MARSHAL (627-7425) • Fax: (212) 398-2000

NYC@MarshalBiegel.com • www.NewYorkCityMarshal.com

**LEVY AND DEMAND ON**                                    February 12, 2024

345 EAST 56TH STREET OWNERS
INC C/O HALSTEAD MANAGEMENT CO
ATT COUNSEL 770 LEXINGTON AVENUE
NEW YORK NY 10065

JUDGMENT CREDITOR
YOSSEF KAHLON (JOSSEF KAHLON),
ATLAS SOLAR HOLDINGS LLC
                **VS**
ERICA T. YITZHAK THE LAW OFFICES OF ERICA T. YITZHAK AND
ERICA T. YITZHAK, ESQ., P.C.
JUDGMENT DEBTOR

GREETINGS:

Attached you will find a Property Execution with Notice to Garnishee. As directed under **CPLR §5232(a)**, you are required to turn over to me all property of the judgment debtor currently in your possession or custody, not to exceed the following amount:

| | |
|---|---|
| Judgment. . . . . . . . . . . | $1,503,013.70 |
| Interest. . . . . . . . . . . | $242,793.83 |
| Statutory Fees. . . . . . . . | $15.00 |
| Expense . . . . . . . . . . . | $0.00 |
| Poundage. . . . . . . . . . | $87,291.12 |
| **TOTAL** | **$1,833,113.65** |

Plus $371.24 interest for each additional day from the date on this levy.

**Any monies paid to the judgment debtor after receipt of this levy is in violation of certain New York State laws.** All monies due the above-named judgment debtor for rent, escrow, commission, or any other means, must immediately be paid directly to this City Marshal's Office. This also includes the surrender to me of any stock certificates, bonds, company shares, etc…belonging to the debtor. I am sorry to put you in this position but have no other choice since the judgment debtor has failed to meet the obligation set forth by the Civil Court.

PLEASE MAKE ALL CHECKS PAYABLE TO: NYC MARSHAL STEPHEN W. BIEGEL
Should you have any questions, kindly contact my office.
MARSHAL'S DOCKET # E 46241

Very truly yours,

STEPHEN W. BIEGEL
Marshal City of New York, Badge #27

SIGNATURE OF OFFICIAL ACCEPTING LEVY: _____

PRINTED NAME: _____  DATE: _____ (BANKATTR)

Case 2:24-cv-05383-PKC-LGD   Document 9-1   Filed 08/21/24   Page 54 of 56 PageID #: 658

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Index No. 601659/2016

-------------------------------------------------------------------X
YOSSEF KAHLON a/k/a JOSSEF KAHLON and
ATLAS SOLAR HOLDINGS, LLC,

**EXECUTION WITH NOTICE
TO GARNISHEE**

Plaintiffs,

-against-

ERICA T. YITZHAK, THE LAW OFFICES OF
ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ.,
P.C.,

Defendants.
-------------------------------------------------------------------X

# 𝕿𝖍𝖊 𝕻𝖊𝖔𝖕𝖑𝖊 𝖔𝖋 𝖙𝖍𝖊 𝕾𝖙𝖆𝖙𝖊 𝖔𝖋 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐

TO THE ENFORCEMENT OFFICER:

WHEREAS, in an action in the Supreme Court of the State of New York, County of Nassau, between YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR HOLDINGS, LLC, as plaintiffs, and ERICA T. YITZHAK, THE LAW OFFICES OF ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ., P.C., as defendants, a judgment was entered on or about April 29, 2022, in favor of YOSSEF KAHLON a/k/a JOSSEF KAHLON and ATLAS SOLAR HOLDINGS, LLC, judgment creditors, and against ERICA T. YITZHAK, THE LAW OFFICES OF ERICA T. YITZHAK and ERICA T. YITZHAK, ESQ., P.C., judgment debtors, in the principal amount of $1,503,013.70, of which $1,503,013.70, together with interest thereon from April 29, 2022, remains due and unpaid,

**NOW, THEREFORE, WE COMMAND YOU** to satisfy the said judgment out of the real and personal property of the above named judgment debtor and the debts due to him; and that only the property in which said judgment debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; AND TO RETURN this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made within that time or within extensions of that time made in writing by the attorney(s) for the judgment creditor.

Case 2:24-cv-05383-PKC-LGD    Document 9-1    Filed 08/21/24    Page 55 of 56 PageID #: 659

**PLEASE TAKE NOTICE,** that a notice in the form presented by subdivision (e) of section fifty-two hundred twenty-two of the CPLR has been duly served upon the judgment debtor or obligor within a year prior to the date of this execution.

## NOTICE TO GARNISHEE

To:        **345 EAST 56TH STREET OWNERS, INC.**

Address:   **c/o Halstead Management Co., Att Counsel**
           **770 Lexington Avenue, New York, New York 10065**

WHEREAS, it appears that you are indebted to the judgment debtor, above named, or in possession or custody of property not capable of delivery in which the judgment debtor has an interest, including, without limitation, the following specified debt and property:

**Shares of stock relating to the cooperative apartment known as and located at 345 East 56th Street, Apt. 4D, New York, New York 10022, in the name of ERICA T. YITZHAK.**

NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any property specified in this notice; and to pay to the sheriff, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment;

AND TAKE NOTICE that until such transfer or payment is made or until the expiration of 90 days after the service of this execution upon you or such further time as is provided by any order to the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or play over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court:

AND TAKE FURTHER NOTICE THAT at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the court upon motion of the judgment creditor has provided, this levy shall be void except as to property or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections 5225 or 5227 of the Civil Practice Law and Rules has been brought;

Case 2:24-cv-05383-PKC-LGD Document 9-1 Filed 08/21/24 Page 56 of 56 PageID #: 660

AND TAKE FURTHER NOTICE THAT pursuant to subdivision (l) of section fifty-two hundred five of the Civil Practice Law and Rules, three thousand dollars of an account containing direct deposit or electronic payments reasonably identifiable as statutorily exempt payments, as defined in paragraph two of subdivision (l) of section fifty-two hundred five of the Civil Practice Law and Rules, is exempt from execution and the garnishee cannot levy upon or restrain three thousand dollars in such an account;

AND TAKE FURTHER NOTICE THAT pursuant to subdivision (i) of section fifty-two hundred twenty-two of the Civil Practice Law and Rules, an execution shall not apply to an amount equal to or less than ninety percent of the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.

Dated:      New York, New York
            February 12, 2024

VLOCK & ASSOCIATES, P.C.
Attorneys for Judgment Creditor
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020

By: _____
Stephen Vlock, Esq.